# IN THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF OKLAHOMA

MARIO WILLIAMS, )
 )
        Plaintiff, )
 )
v. ) No. CIV 13-015-RAW-SPS
 )
TIM WILKINSON, et al., )
 )
        Defendants. )

## OPINION AND ORDER

This action is before the court on the defendants' motion for summary judgment (Dkt. 78). The court has before it for consideration plaintiff's complaint (Dkt. 1), the defendants' motion (Dkt. 78), plaintiff's response to the motion (Dkt. 79), a special report prepared by the Oklahoma Department of Corrections (DOC) at the direction of the court (Dkt. 21), in accordance with *Martinez v. Aaron*, 570 F.2d 317 (10th Cir. 1978), and plaintiff's responses to the special report (Dkt. 33, 52).

Plaintiff, an inmate in the custody of the Oklahoma Department of Corrections (DOC) who is incarcerated at Cimarron Correctional Facility in Cushing, Oklahoma, brought this action under the authority of 42 U.S.C. § 1983, seeking relief for alleged constitutional violations during his incarceration at Davis Correctional Center (DCF) in Holdenville, Oklahoma. The remaining defendants are the following DCF officials: Warden Tim Wilkinson, Medical Administrator Kathy Miller, Grievance Coordinator Terry Underwood, Nurse Angela Brannon, Case Manager Lewis, and Correctional Officer Kidwell.[1]

**Defendant Angela Brannon**

On March 4, 2013, the summons for Defendant Nurse Angela Brannon was returned unexecuted, stating she no longer was at the provided address, and her current address was

---

[1] On March 18, 2014, Defendant Debbie Morton, Director's Designee for the DOC Administrative Review Authority, was dismissed from this action for lack of personal participation in the constitutional violations alleged in the complaint. (Dkt. 47).

unknown. (Dkt. 15). On April 13, 2014, plaintiff was directed to show cause in writing why Ms. Brannon should not be dismissed from this action for his failure to serve her in accordance with Fed. R. Civ. P. 4(m). (Dkt. 57). Plaintiff's response asserted he had corresponded with counsel for the other DCF defendants to try to determine Brannon's address. (Dkt. 60). The court granted him additional time to show cause as previously directed. (Dkt. 61, 64). On May 19, 2014, and June 2, 2015, the court directed Defendant Warden Tim Wilkinson to provide Ms. Brannon's last known address to the United States Marshals Service. (Dkt. 65, 86). The alias summons as to Ms. Brannon was returned unexecuted on July 9, 2015, with a notation that she no longer resides at the listed address, and her former neighbor had advised that she had moved to an unknown address. (Dkt. 87). Because Angela Brannon has not been served in accordance with Fed. R. Civ. P. 4(m), she is dismissed without prejudice from this action.

**Count 1**

In Count 1 plaintiff alleges he was denied his Fourteenth Amendment due process rights. He claims that on September 12, 2012, he was falsely charged with a misconduct by Defendant Nurse Angela Brannon. His hearing was conducted on September 17, 2012, and he was found guilty by Hearing Officer Robertson. Plaintiff appealed to Grievance Coordinator Terry Underwood, but Ms. Underwood wrongfully denied the appeal on September 24, 2012, and the warden affirmed. Plaintiff then appealed to the Administrative Review Authority (ARA), but that appeal also was denied.

**Count 2**

Plaintiff next claims that on August 23, 2012, he filed a Request to Staff (RTS) to the Medical Supervisor, requesting a misconduct for Nurse Brannon, because she allegedly denied him medical treatment on August 22, 2012. Plaintiff's alleged medical problem arose when Correctional Officer Kidwell slammed plaintiff's elbow in the food port. The RTS was not answered, so plaintiff filed a grievance on September 11, 2012. Plaintiff asserts that the next day, false charges were filed against him by Ms. Brannon. She alleged plaintiff had

made a false statement relating to the August 22, 2012, incident. Plaintiff alleges Brannon filed the charges in retaliation for his grievance against her.

On August 27, 3012, plaintiff signed for a level promotion to Level 4. He was not given a copy of the paperwork, but Defendant Case Manager Lewis said, "I'm surprised you're getting a promotion. You're a troublemaker, I'll get your copy in a day or two." On September 15, 2012, plaintiff sent an RTS to the warden, addressing his concern about not receiving his adjustment review copy from Lewis. Plaintiff also spoke to other staff members about receiving a copy, but got no results.

The warden allegedly addressed plaintiff's concerns with Lewis. Four days later on September 22, 2012, Lewis came to plaintiff's cell door and became argumentative and threatening. Lewis then went to his office and demoted plaintiff from Level 4 to Level 1 in retaliation for plaintiff's speech and the RTS filed with the warden. Lewis returned with a copy of plaintiff's level demotion that stated plaintiff was "demoted due to disrespectful behavior." Plaintiff asserts this allegation was false, and he did not disrespect Lewis or violate any prison rules. Plaintiff submitted an RTS and a grievance about this matter. He claims his exercising his First Amendment right of free speech and his filing a grievance resulted in the level demotion and an unfavorable classification that will keep him in administrative segregation longer than necessary.

Plaintiff further asserts he has been in restrictive "supermax' administrative segregation for more than four years, as of the time he filed his complaint. He is on 23-hour lockdown with only one hour a day out of his cell. He has no means for proper recreation and has to go to an outside cage with urine and feces on its foundation, caused by a lack of toilet facilities. He has been left in the cage when the temperature is 100 degrees or more in the summer, with no access to water. He asserts these conditions are a form of retaliation and have no relationship to legitimate penological interests.

Plaintiff also alleges he filed several grievances, because he "was impeded, interfered with court access, and retaliated against for using the court system. He claims DCF staff and

3

DOC Administrative Review Authority staff members did so in an attempt to prevent him from exhausting his administrative remedies.

**Ground 3**

In Ground 3 plaintiff alleges Eighth Amendment violations concerning his legal mail. He claims that on August 20, 2012, he placed his outgoing legal mail on his food port to be mailed. The next day the mailroom staff came to his cell to deliver incoming legal mail, and he asked to see the record of the outgoing legal mail that went out that morning. The record indicated no mail was sent out in his name, and the mail staff explained that no outgoing mail in his name had been received.

That evening Defendant Correctional Officer Kidwell came to work on plaintiff's pod. Plaintiff called him to his cell and asked what had happened to his legal mail. Kidwell "aggressively" said, "I don't know and I don't care." Kidwell then began walking away, saying "I got better things to do." Plaintiff replied, "Then bring me a RTS, so I can write the supervisor to locate my legal mail." Kidwell delivered the RTS form, and plaintiff completed it and placed it in the door. Kidwell took it later that evening.

The next morning, August 22, 2012, Kidwell was serving trays and aggressively attempted to slam and push plaintiff's tray in the food port. This action allegedly caused the tray to bounce off the door and hit the ground. Kidwell and plaintiff argued about the incident and why it happened. Kidwell claimed it was plaintiff's fault and that plaintiff had attempted to hit Kidwell with the tray, which plaintiff denies.

Kidwell gave plaintiff another tray and continued to pass out trays to the other prisoners. While plaintiff was talking to another prisoner about the commotion, without any warning, Kidwell allegedly came to plaintiff's food port and quickly and forcefully slammed plaintiff's food port with plaintiff's left elbow wedged in the middle. When plaintiff tried to push back to free his elbow, Kidwell lowered his center of gravity and applied more force. Plaintiff yelled, "You got my arm," but Kidwell did not release the force. Plaintiff pulled his arm free, causing scrapes and bruises.

4

In a rage, plaintiff asked to see the captain who arrived several minutes later and spoke with Kidwell. The captain then came to plaintiff's cell and spoke with plaintiff and saw the injury before calling the nurse. Nurse Brannon looked at plaintiff's arm through the window, asked him a few questions, and walked away without administering treatment.

Plaintiff claims his arm was painful, burning and bleeding, so he immediately submitted an emergency grievance. At approximately 8:00 a.m. the grievance coordinator Ms. Adams came to plaintiff's cell to investigate. She returned in about 90 minutes and told plaintiff she had located his legal mail and sent it out, and the emergency grievance would be granted so he could see a doctor. Later that evening, plaintiff saw the doctor and was treated for his injuries. In addition, three photographs of the injuries were taken by prison staff.

Plaintiff maintains Kidwell's use of force was unreasonable, excessive, retaliatory, malicious, and sadistic. Plaintiff contends Kidwell's actions were meant to punish him for having filed an RTS to a supervisor about his outgoing legal mail. Furthermore, plaintiff asserts he did not violate any prison rules, so there was no provocation to use physical force against him.

Plaintiff claims that on September 2 and 9, 2012, he submitted medical requests for tendinitis in his left elbow, and he received an elbow sleeve. On October 19, 2012, the elbow was causing plaintiff intense pain, so he submitted a medical slip. He was scheduled to see the doctor and was seen on October 23, 2012. The doctor said he would have an X ray and MRI of the elbow. On November 14, 2012, he submitted another medical slip, complaining of continued elbow pain and inquiring about the MRI. The response stated there were no active orders for an MRI.

Plaintiff also asserts that on November 17 and 23, 2012, he submitted a medical slip requesting to see the doctor about the MRI or X ray. On November 26, 2012, he was told he was scheduled for an appointment. Plaintiff complains he did not receive a competent medical examination and diagnosis of his left elbow and was in constant pain, and he

believes the delay in providing medial help was intentional and punitive.

**Standard of Review**

The CCA/DCF defendants have moved the court for summary judgment. Having moved for summary judgment in their favor, the movants are required to show the absence of a genuine issue of material fact. Fed. R. Civ. P. 56(a).

> A party asserting that a fact cannot be or is genuinely disputed must support the assertion by:
>
> (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or
>
> (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1).

Summary judgment is not appropriate if there exists a genuine material factual issue such that a reasonable jury could return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249-51 (1986). Plaintiff, as "the nonmoving party may not rest on [his] pleadings but must set forth specific facts showing that there is a genuine issue for trial as to those dispositive matters for which [he] carries the burden of proof." *Applied Genetics Int'l. v. First Affiliated Sec., Inc.*, 912 F.2d 1238 (10th Cir. 1990) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986)). In this regard, all evidence of the nonmoving party is deemed true, and all reasonable inferences are drawn in favor of the nonmoving party. *Id.* at 255 (citing *Adickes v. S. H. Kress & Co.*, 398 U.S. 114, 158-59 (1970)). "To defeat a motion for summary judgment, evidence . . . must be based on more than mere speculation, conjecture, or surmise." *Bones v. Honeywell Int'l, Inc.*, 366 F.3d 869, 875 (10th Cir. 2004). This court's function is not "to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Id*. at 249. With these standards in mind, the court turns to the merits of the defendants'

motion.

The defendants allege, among other things, that plaintiff has failed to exhaust the administrative remedies for any of his claims. "No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). Inmates are required to exhaust available administrative remedies, and suits filed before the exhaustion requirement is met must be dismissed. *Booth v. Churner*, 532 U.S. 731, 740-41 (2001); *Yousef v. Reno*, 254 F.3d 1214, 1216 n.1 (10th Cir. 2001). "An inmate who begins the grievance process but does not complete it is barred from pursuing a § 1983 claim under PLRA for failure to exhaust his administrative remedies." *Jernigan v. Stuchell*, 304 F.3d 1030, 1032 (10th Cir. 2002) (citation omitted). In deciding a motion to dismiss based on nonexhaustion, the court can consider the administrative materials submitted by the parties. *See Steele v. Fed. Bureau of Prisons*, 355 F.3d 1204, 1212 (10th Cir. 2003), *abrogated in part on other grounds*, *Jones v. Bock*, 549 U.S. 199 (2007).

According to the DOC Offender Grievance Process, OP-090124, an inmate first must attempt to resolve his complaint informally by communicating with staff within three days of the incident. If that is unsuccessful, he may submit a Request to Staff (RTS) within seven calendar days of the incident, alleging only one issue per form. If the offender does not receive a response to his RTS within 30 calendar days of submission, he may submit a grievance to the Review Authority (warden's office) with evidence of having submitted the RTS, asserting only the issue of the lack of response to the RTS. If the complaint is not resolved after the response to the RTS, the offender then may file a grievance. If the grievance also does not resolve the issue, the inmate may appeal to the ARA or the Chief Medical Officer. The administrative process is exhausted only after all of these steps have been taken. The record shows that plaintiff submitted the following grievances concerning the allegations in his complaint:

7

**Grievance No. 2012-1001-496-G**

On August 22, 2012, plaintiff submitted a grievance labeled as an emergency, seeking medical attention for his elbow that had been injured by Defendant Kidwell. (Dkt. 78-5 at 3). He requested to see a doctor as soon as possible and to have a picture of his injury taken. *Id*. The response on the same date stated the grievance coordinator spoke with plaintiff and scheduled an appointment with medical services. (Dkt. 78-5 at 2). Plaintiff's request to have pictures taken also was granted. *Id*. While the administrative remedies for this grievance were exhausted, none of plaintiff's constitutional claims in the complaint were exhausted by this grievance.

**Grievance No. 2012-1001-505-G**

On August 22, 2012, plaintiff submitted an RTS to Warden Wilkinson, alleging he had been assaulted by Officer Kidwell and asking that the matter be investigated and the issue corrected. (Dkt. 78-5 at 7). Wilkinson responded the same day, advising "[t]his matter is under investigation and appropriate action will be taken." *Id*. On August 28, 2012, plaintiff filed a grievance referencing his RTS and requesting an investigation. (Dkt. 78-5 at 9). He did not explain why he was filing a grievance, except for a notation of "prison conditions" and a reference to the RTS. *Id*. The grievance was returned unanswered on August 28, 2012, because it was not specific as to the complaint, dates, places, personnel involved, and how he was affected. (Dkt. 78-5 at 8). Plaintiff was advised he could resubmit the grievance within ten days, which he did on August 29, 2012. (Dkt. 78-5 at 6, 8). That grievance also was granted. (Dkt. 78-5 at 5). The respondent asserts the matter was investigated, but this grievance did not exhaust the administrative remedies for the claims in plaintiff's lawsuit.

**Grievance No. 2012-1001-0534-G**

Plaintiff alleges in this September 11, 2012, grievance that he filed an RTS with Kathy Miller on or about August 23, 2012, alleging nurse misconduct by Nurse Brannon, but Miller did not respond to the RTS. (Dkt. 78-5 at 24). The grievance was returned unanswered on

8

September 12, 2012, because he had not attached a copy of the RTS, and he had not waited 30 days from filing the RTS to submit a grievance alleging it was unanswered. (Dkt. 78-5 at 23). Plaintiff was advised he could properly resubmit the grievance within 10 days of receipt of the response. *Id.* On September 21, 2012, he resubmitted the grievance. (Dkt. 78-5 at 20).

Defendant Underwood, the DCF Grievance Coordinator, has submitted an affidavit concerning the grievances. (Dkt. 78-12). She states that on September 27, 2012, she sent plaintiff a memorandum advising that pursuant to policy, he should have waited until September 23, 2012, to file a grievance seeking a response to the RTS he claimed was dated August 23, 2012. In addition, he was required to provide evidence that he actually submitted the RTS to the staff member. Plaintiff had done neither.

Underwood also contacted Health Services Administrator Miller to inquire whether she actually had received the RTS. Miller told Underwood she had not received it and had no record of it. At the time the RTS was submitted, the practice at DCF was to use a receipt process or have staff sign a submitted RTS to acknowledge its receipt. Plaintiff apparently did neither.

According to Underwood, plaintiff could have abandoned Grievance No. 12-1001-534-G after receiving Underwood's memorandum, submitted a new RTS, and obtained the necessary receipt. Then, if no response was obtained, he could have submitted another grievance 30 days later with the receipt as evidence of submission. Because plaintiff did not support the grievance with proof of the RTS submission, Grievance No. 2012-1001-534-G was properly returned to him.

Plaintiff next pursued appeals to both the facility head and to the Oklahoma DOC ARA. He alleged he had no other method to exhaust his administrative remedies regarding his alleged issue with Nurse Brannon. The only issue in Grievance No. 2012-1001-534-G was that he wanted the facility staff to respond to a purportedly submitted RTS. He claims his efforts to exhaust his administrative remedies were "thwarted," but the record shows the

grievance coordinator provided him an opportunity to correct and resubmit to the facility level. Also, as pointed out above, plaintiff could have simply resubmitted an RTS when there was no proof of the initial RTS. The court, therefore, finds that plaintiff's efforts to utilize the administrative remedies process were not impeded, and he did not exhausted any of the claims in this lawsuit through this grievance.

**Grievance No. 2012-1001-549-G**

On September 22, 2012, plaintiff submitted an RTS to Warden Wilkinson, complaining that Case Manager Lewis had demoted him from Level 4 to Level 1. (Dkt. 78-5 at 38). Assistant Warden Martin responded on September 25, 2012, stating, "Mr. Williams, CM Lewis states that you disrespected him and you were demoted due to your actions. I support the decision of the Unit Team in this matter." *Id.*

Plaintiff then filed this grievance on September 27, 2012, asserting he had been demoted and requesting to be promoted back to Level 4 and to stop retaliation for his exercising his First Amendment rights. (Dkt. 78-5 at 36). The initial grievance response, dated October 1, 2012, states, "After an investigation of the issue it was determined: CM Lewis documented in detail the details of the demotion and the demotion to Level 1 was approved by the Unit Team. The Grievant's request to be promoted back to level 4 is denied." (Dkt. 78-5 at 35).

Plaintiff appealed that denial to the DOC ARA on October 5, 2012. (Dkt. 78-5 at 32). On October 31, 2012, the ARA remanded the grievance back to the facility for further investigation and a revised response. (Dkt. 78-5 at 31). According to the affidavit by Terry Underwood, the ARA's memorandum to her office specifically pointed out that the grievance should not have been processed as submitted by plaintiff, because it contained numerous procedural errors. (Dkt. 78-12 at 6).

After further investigation, the DCF Grievance Coordinator provided an amended response that returned the grievance unanswered for (1) failure to submit the RTS to the appropriate staff member, and (2) grieving more than one issue on the grievance form. (Dkt.

10

78-5 at 29). Plaintiff was given ten days to resubmit the grievance, and he was advised to address his RTS to the proper person. (Dkt. 78-5 at 29).

Instead of following the guidance from the Grievance Coordinator, plaintiff appealed the returned grievance to the DOC ARA. (Dkt. 78-5 at 42-43). On November 27, 2012, plaintiff received a memorandum response from the ARA, returning his grievance appeal unanswered and noting that he had been given specific instructions to resubmit to the appropriate staff member and to follow the facility's directive to submit a correct appeal before appealing to the ARA. (Dkt. 78-5 at 26).

Again, plaintiff chose not to follow the corrective guidance given him by the Grievance Coordinator and the DOC ARA. Therefore, he did not exhaust his administrative remedies as to any issues raised in this grievance.

**Medical Follow-Up Care**

With respect to plaintiff claim of denied follow-up medical care for his elbow, the DCF Grievance Coordinator, states in her affidavit that she had searched the records and found no grievances regarding this issue. (Dkt. 78-12 at 7). Mike Murray, a Nurse Manager in the DOC Medical Services Administration, states by affidavit that he has reviewed the offender medical grievance log and the individual offender grievance files maintained by the Medical Services administrative offices. He found no grievance appeals or other correspondence concerning medical issues submitted by plaintiff. (Dkt. 78-13). Therefore, plaintiff has not exhausted his administrative remedies for medical claims in accordance with OP-090124. *Id*.

After careful review, the court finds plaintiff has failed to show there is a genuine issue for trial as to whether he has exhausted his administrative remedies, and the defendants' motion for summary judgment should be granted.

**ACCORDINGLY,** Defendant Angela Brannon is DISMISSED WITHOUT PREJUDICE for plaintiff's failure to serve her in accordance with Fed. R. Civ. P. 4(m). Defendants Tim Wilkinson, Kathy Miller, Terry Underwood, Lewis, and Kidwell's motion

for summary judgment (Dkt. 78) is GRANTED, and these defendants are DISMISSED WITHOUT PREJUDICE for failure to exhaust administrative remedies, pursuant to 42 U.S.C. § 1997e(a). Defendant Debbie Morgan previously was dismissed WITH PREJUDICE for lack of personal participation. This action is dismissed in its entirety, and the dismissal shall count as a STRIKE, pursuant to 28 U.S.C. § 1915(g).

**IT IS SO ORDERED** this 29th day of September 2015.

**Dated this 29th day of September, 2015.**

Ronald A. White
United States District Judge
Eastern District of Oklahoma